**The STATE of Texas for the Best Interest and Protection of P.W. as a Temporary Mentally Ill Person.**

No. 2–90–031–CV.

Court of Appeals of Texas,
Fort Worth.

April 6, 1990.

Kelcie A. Hibbs, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., and Dan Risinger, Asst. Dist. Atty., Fort Worth, for appellee.

Before WEAVER, C.J., and JOE SPURLOCK, II and DAY, JJ.

JOE SPURLOCK, II, Justice.

On January 9, 1990, appellant's son filed an Application for Temporary Mental Health Services pursuant to the Texas Mental Health Code seeking commitment of his mother, P.W. *See* TEX.REV.CIV. STAT.ANN. art. 5547–32 (Vernon Supp. 1990). Appellant was represented by counsel and trial was held before a jury. A judgment was entered on January 24, 1990, indicating a unanimous verdict finding that appellant is mentally ill, and as a result of that mental illness appellant is: (a) likely to cause serious harm to herself; (b) likely to cause serious harm to others; and (c) will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress and will continue to experience deterioration of her ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment. The trial court ordered appellant to be committed as an in-patient for observation and/or treatment for a period not to exceed ninety days from January 24, 1990. An amended judgment was entered on January 29, 1990, specifically committing appellant to Wichita Falls State Hospital for a period not to exceed ninety days "from the date of this judgment."

We reverse, and order appellant's commitment to be vacated.

Appellant brings forth five points of error and we find the fifth point dispositive of the entire case.

 Appellant's fifth point of error urges that the trial court erred in submitting the case to the jury because there was insufficient evidence to support findings that appellant was likely to cause harm to herself or others, or that she will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress and will continue to experience deteri-

oration of her ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment. We will construe this point as urging a factual insufficiency of the evidence to support the jury's finding. In a civil case such as this, insufficiency of the evidence must have been raised in a Motion for New Trial in order to preserve error. *See* TEX.R.CIV.P. 324(b)(2); TEX. R.APP.P. 52(d). However, since this case involves incarceration of appellant as in a criminal case, we will consider this point of error as we do in a criminal case, without preservation of error.

 The burden of proof in an involuntary commitment proceeding is on the State to prove by clear and convincing evidence that appellant is likely to cause serious harm to herself, or likely to cause serious harm to others, or will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress and will continue to experience deterioration of her ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment. TEX.REV.CIV.STAT.ANN. art. 5547–50(b) (Vernon Supp.1990). The proof must include expert testimony and, unless waived, must include evidence of either a recent overt act or a continuing pattern of behavior in either case tending to confirm the likelihood of serious harm to the person or others or the person's distress and deterioration of ability to function. *Id.* at art. 5547–50(c).

 Clear and convincing evidence is defined as that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *State v. Addington,* 588 S.W.2d 569, 570 (Tex.1979) (per curiam). This is an intermediate standard, falling between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *Id.* While the proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *Id.*

This court has previously held that evidence which merely reflects that an individual is mentally ill and in need of hospitalization is no evidence that the statutory standard has been meet. *Harris v. State*, 615 S.W.2d 330, 333 (Tex.Civ.App.—Fort Worth 1981, writ ref'd n.r.e.) (quoting from *Lodge v. State*, 597 S.W.2d 773, 779 (Tex. Civ.App.—San Antonio), *aff'd*, 608 S.W.2d 910 (Tex.1980)). The evidentiary standards for involuntary commitment for treatment of mental illness are high. *Id.* The facts in *Harris* are very similar to the facts in the present case. In *Harris*, the proposed patient was subject to delusions and she believed, among other things, in a nationwide conspiracy which prohibited her from obtaining a job or from cashing a monthly check from the German Government. *Id.* at 331. She was also convinced that her thoughts were being recorded and played back over the radio. *Id.* The proposed patient's husband in that case further testified that Mrs. Harris had threatened suicide, although he knew of no actual suicide attempts and the patient herself testified she was not suicidal. *Id.* at 332.

In the present case, appellant was diagnosed as suffering from a delusional disorder of paranoia. Dr. Turbeville testified as an expert witness that appellant was mentally ill as defined by the Texas Mental Health Code. She further testified that appellant was likely to cause serious harm to herself or others. Appellant's cousin, an investigator for the Dallas Police Department, testified that appellant had called him and asked him "where would be the best place to hold [a] pistol to kill herself without causing a lot of pain." Appellant was also convinced that everyone was an agent of her ex-husband and that he was tapping her phone.

Appellant's son testified that his mother had broken the back window in her car with a steel bar and that she had burned clothes and picture frames in her fireplace. He further testified that she had attempted to throw away valuable items in the garbage. Neighbors also testified about these instances, and further testified that on another occasion appellant had gone out in the front yard and had broken boxes of dishes on her driveway. The police had been called on these occasions. Appellant testified she had never attempted to kill herself and she gave reasons for her conduct in the other incidents.

We hold that the evidence is not sufficiently clear and convincing to show that appellant is a danger to herself or to others. Although there may be a "potential" harm from appellant, it is not serious enough to warrant depriving her of her liberty. *See Moss v. State*, 539 S.W.2d 936, 950 (Tex.Civ.App.—Dallas 1976, no writ). There was no real evidence that appellant had ever tried to hurt herself, or others, or that her condition was deteriorating to a point she *might* do so. The State has failed to sustain its burden by proving by clear and convincing evidence that appellant is likely to cause harm to herself or others, or that she will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress and will continue to experience deterioration of her ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment.

Appellant's fifth point of error is sustained.

The judgment is reversed and the order of commitment vacated.