137 S.W.3d 131 (2004)
M.S., Appellant,
v.
The STATE of Texas, Appellee.
Nos. 01-03-01080-CV, 01-03-01101-CV.
Court of Appeals of Texas, Houston (1st Dist.).
March 18, 2004.
*132 Mark J. Kelly, Texas City, TX, for Appellant.
Roger L. Ezell, Galveston, TX, for Appellee.
Panel consists of Justices NUCHIA, ALCALA, and HANKS.

*133 OPINION
GEORGE C. HANKS, JR., Justice.
In these accelerated cases, appellant, M.S., challenges the trial court's orders that he be involuntarily committed for temporary, inpatient mental health services and be administered psychoactive medications.
Appellant argues that the evidence was legally and factually insufficient to support the trial court's order for temporary, inpatient mental health services and order to administer psychoactive medication. We dismiss in part and reverse and render in part.

Background
Linea McNeel, M.D., a board-certified psychiatrist, testified that, after evaluating appellant, she determined that appellant suffered from chronic paranoid schizophrenia. Dr. McNeel testified that appellant
... has a history of improving while he is in the hospital when he takes medication but not being compliant with the medication when he leaves the hospital. He becomes aggressive, intrusive with other patients. He has passed notes to female patients that were inappropriate.[1] He is intrusive
Dr. McNeel testified that appellant was not a danger to himself. She further testified that, as a result of suffering from a mental illness, appellant was likely to cause serious harm to others. He became combative when told an EAD[2] was being filed, and he remained intrusive and had poor boundaries with others. He had to be restrained in the emergency department, and he was suffering severe abnormal mental, emotional, or physical distress. Dr. McNeel testified, however, that appellant could function independently and could provide for his basic needs, but he could not make a rational or informed decision as to whether or not to submit to treatment. She further testified that he could not be successfully treated as an outpatient, and she recommended that he be placed in the Austin State Hospital. Finally, Dr. McNeel testified that "it is likely that he would be [aggressive with others] because I think he would quit taking his medicine [if released]." Her primary complaint was that she did not think appellant would be compliant with his medications if he were not committed.
Appellant testified during the hearing. When asked if he takes his medication when he was not in the hospital, appellant responded, "Yes, I do except sometimes I do lessen it to a point where I don't take it as much. I just lessen it to where I don't take as much times."
Appellant's mother, Martha Marie Moyt, testified that appellant lived with her off and on. She testified that she resisted her son's efforts to see a physician. Moyt testified that appellant was doing "pretty good" on his medications at home, and that "he was calm at home."
Selina Josey, the liaison with the Gulf Coast Center, recommended that, if the trial court decided to commit appellant, he should be placed in the Austin State Hospital. She testified that appellant's medical *134 records[3] indicated that he was "very aggressive with his family at home" and he was "minimally compliant with his medications." Josey interpreted appellant's records to show that appellant "does not feel that he needs treatment" because he was minimally compliant with his medications.
Appellant testified again at his hearing. He explained that he was restrained in the emergency room because "an officer came toward me in an erratical manner and he put his hand on my throat and all I did was pull his finger off and his finger hurt and that was it." Appellant acknowledged that he had been in the hospital three times for this mental conditionone of which was voluntary.
The trial court found that appellant was suffering from a mental illness and, as a result of that mental illness, he was likely to cause serious harm to others and he was suffering from severe and abnormal mental, emotional or physical distress and was unable to make a rational and informed decision about whether or not to submit to treatment. The trial court ordered that appellant be committed to the Austin State Hospital for a period of time not to exceed 90 days.[4]
At the conclusion of the commitment hearing, Dr. McNeel testified that, because of his mental illness, appellant lacked the capacity to make a rational decision about whether or not to take psychoactive medication. She testified that his prognosis was good with the medications, but that there would be further deterioration requiring a more restrictive environment if he did not take his medications.
The trial court ordered that the Texas Department of Mental Health and Mental Retardation was authorized to administer several different types of medications in the event that appellant refused medication or the prescribed dosage.

Order to Administer Psychoactive Medications
There was no notice of appeal filed in cause number 1083-A, the order for the administration of psychoactive medications. Consequently, cause number 01-03-01101-CV pertaining to the appeal of the order to administer psychoactive medication is dismissed for want of jurisdiction. See TEX.R.APP. P. 25.1.

Order of Commitment
Appellant argues that the evidence was legally and factually insufficient to support the trial court's order for commitment.
Standard of Review
On an application for court-ordered temporary inpatient mental health services, the Texas Mental Health Code requires the State to prove, by clear and convincing evidence, that
(1) the proposed patient is mentally ill; and
(2) as a result of that mental illness the proposed patient:
(A) is likely to cause serious harm to himself;
(B) is likely to cause serious harm to others; or
(C) is:
(i) suffering severe and abnormal mental, emotional, or physical distress;

*135 (ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and
(iii) unable to make a rational and informed decision as to whether or not to submit to treatment.
TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (Vernon 2003). A trial court must specify which criteria form the basis for its decision to grant the State's application. Id. § 574.034(c) (Vernon 2003); K.T. v. State, 68 S.W.3d 887, 889-90 (Tex.App.-Houston [1st Dist.] 2002, no pet.).
To constitute clear and convincing evidence under the Mental Health Code for inpatient mental health services, the evidence must include expert testimony and "evidence of a recent, overt act or a continuing pattern of behavior that tends to confirm: (1) the likelihood of serious harm to the proposed patient or others; or (2) the proposed patient's distress and the proposed patient's deterioration of ability to function." TEX. HEALTH & SAFETY CODE ANN. § 574.034(d) (Vernon 2003);[5]G.H. v. State, 96 S.W.3d 629, 633 (Tex.App.-Houston [1st Dist.] 2002, no pet.). Accordingly, section 574.034(d) requires a finding that
there was evidence of a recent overt act that tended to confirm
(1) the likelihood of serious harm to the proposed patient or others or
(2) the proposed patient's distress and the deterioration of the proposed patient's ability to function; or
there was a continuing pattern of behavior that tended to confirm
(1) the likelihood of serious harm to the proposed patient or others or
(2) the proposed patient's distress and the deterioration of the proposed patient's ability to function,
TEX. HEALTH & SAFETY CODE ANN. § 574.034(d). To establish a matter in dispute by clear and convincing evidence, a party must present a degree of proof that will produce in the mind of the jury "a firm belief or conviction" as to the truth of the matter asserted. K.T., 68 S.W.3d at 890.
In conducting a legal-sufficiency review, we consider only the evidence and inferences tending to support the finding, and we disregard all contrary evidence and inferences. Id. If any evidence of probative force exists to support the finding, we will uphold the decision. In re KC.M., 4 S.W.3d 392, 395(Tex. App.-Houston [1st Dist.] 1999, pet. denied). In conducting a factual-sufficiency review, we review all the evidence to determine if it was sufficient to produce a firm belief or conviction in the mind of the fact finder of the allegations pleaded. K.T., 68 S.W.3d at 890.
Legal Sufficiency
At trial, it was undisputed that appellant suffered from chronic paranoid schizophrenia, was mentally ill, and required medication on a regular basis to help treat his illness. The trial court found that appellant (1) was likely to cause serious harm to others and (2) was "suffering severe and abnormal mental, emotional or physical distress;[6] and, is unable to *136 make a rational and informed decision as to whether or not to submit to treatment." However, appellant argues that the evidence was legally insufficient to support the trial court's findings because, as is required for a finding of clear and convincing evidence, there was no evidence of a recent, overt act or continuing pattern of behavior tending to confirm (1) the likelihood of serious harm to others or (2) appellant's distress and appellant's deterioration of ability to function.
We have previously held that an expert diagnosis of mental illness, standing alone, is not sufficient to confine a patient for treatment. K.T., 68 S.W.3d at 892; Mezick v. State, 920 S.W.2d 427, 430 (Tex. App.-Houston [1st Dist.] 1996, no writ). Additionally, evidence that merely reflects a patient's mental illness and need for hospitalization is not sufficient to meet the State's burden under section 574.034 of the Mental Health Code. See, e.g., K.T., 68 S.W.3d at 892 (holding evidence of patient's delusion that she was pregnant and had sutures in her vagina not sufficient to meet required statutory burden); D.J. v. State, 59 S.W.3d 352, 357 (Tex.App.-Dallas 2001, no pet.) (holding evidence of patient's psychotic behavior, delusions that she had undergone surgery by satellite and had electronics implanted in her not sufficient to meet required statutory burden); T.G. v. State, 7 S.W.3d 248, 251-52 (Tex.App.-Dallas 1999, no pet.) (holding evidence of patient's delusion that she was in military and that mail carrier was responsible for her welfare not sufficient to meet required statutory burden); Johnstone v. State, 961 S.W.2d 385, 387-88 (Tex.App.-Houston [1st Dist.] 1997, no writ) (holding evidence of patient's schizophrenia, auditory hallucinations, paranoia, irritability, and refusal to take medication not sufficient to meet required statutory burden). In each of these cases, the courts found that the evidence did not constitute clear and convincing evidence under any of the bases allowed under section 574.034(d).
Here, the trial court found that appellant (1) was suffering from severe and abnormal mental, emotional or physical distress and was unable to make a rational and informed decision about whether or not to submit to treatment and (2) was likely to cause serious harm to others.
Severe and Abnormal Mental, Emotional, or Physical Distress
In its order for temporary inpatient mental health services, the trial court found that, in addition to the likelihood of causing serious harm to others, appellant "is suffering severe and abnormal mental, emotional or physical distress; and, is unable to make a rational and informed decision as to whether or not to submit to treatment." The trial court's order tracks the language from the Mental Health Code section 574.034(a)(2)(C)(i),(iii), but specifically excludes part of the conjunctive list of requirements for satisfying this section. Section 574.034(a)(2)(C)(ii) requires a finding that the proposed patient "is experiencing substantial mental or physical deterioration of his ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for his basic needs, including food, clothing, health or safety." Id. § 574.034(a)(2)(C)(ii). The trial court struck through this language that was already printed on the order; therefore, the *137 trial court found that there was insufficient evidence to support that portion of the statute. "To ignore the significance of the conjunctive `and' ... would destroy the meaning of the statute." S. Pac. Transp. Co. v. Garrett, 611 S.W.2d 670, 675 (Tex.Civ.App.-Corpus Christi 1980, no writ) (referring to need to find both that a train was plainly visible and in hazardous proximity when attempting to find negligence per se in auto/train collision.)
Because there was no finding on one of the three mandatory requirements, we hold that there was legally insufficient evidence to support an order for temporary inpatient mental health services based on section 574.034(a)(2)(C).
Likelihood of Serious Harm to Others  § 574.034(a)(2)(B)
The trial court also found that appellant was likely to cause serious harm to others. To sustain this holding, there must be evidence that includes expert testimony and "evidence of a recent, overt act or a continuing pattern of behavior that tends to confirm (1) the likelihood of serious harm to the proposed patient or others; or (2) the proposed patient's distress and the proposed patient's deterioration of ability to function." TEX. HEALTH & SAFETY CODE ANN. § 574.034(d).
Dr. McNeel testified that appellant could function independently and that he was not experiencing substantial mental or physical deterioration. Accordingly, based on Dr. McNeel's testimony, there was no evidence of any recent overt act or continuing pattern of behavior that tended to confirm deterioration of appellant's ability to function.
Finally, we must review the record to determine if the evidence is legally sufficient to support a finding that there was evidence of a recent, overt act or a continuing pattern of behavior that tended to confirm the likelihood of serious harm to appellant or others. Dr. McNeel was specifically asked if there were any recent overt acts or continuing patterns of behavior that tended to confirm the likelihood that appellant would cause serious harm to others. Dr. McNeel responded that appellant "became combative when told an EAD was being filed. He remains intrusive. He has poor boundaries with others." As in the cases cited above, the behavior relied on by Dr. McNeel as the factual bases for her opinion regarding appellant's likelihood of causing serious harm to others constituted nothing more than evidence of appellant's mental illness and did not amount to evidence tending to confirm that appellant was a danger to others. There was no evidence of a recent overt act or a continuing pattern of behavior that tended to confirm the likelihood of serious harm to others. See id.
We sustain appellant's point of error and hold that the evidence was legally insufficient to support the trial court's order of commitment. Because of our disposition of this point of error, we need not consider the factual sufficiency challenge presented in his second point of error.

Conclusion
We reverse the order of the trial court and render judgment denying the State's application to commit appellant for courtordered temporary inpatient mental health services. We dismiss the appeal of the trial court's order requiring the administration of psychoactive medications for want of jurisdiction.
NOTES
[1] The contents of the notes were read into the record. The notes indicated that appellant told a woman that she was "fine," "beautiful," and that he wanted her to "come to [his] room again." Dr. McNeel testified that Mainland Center Hospital does not have "fraternization," and that is why the notes were of some concern.
[2] "EAD" was not defined in the record, but Dr. McNeel acknowledged that she, too, would be angry if someone had filed an EAD on her, but she would not have been combative.
[3] Appellant's medical records were not admitted into evidence.
[4] We note that, although appellant has begun, and may have already been released from his temporary commitment, his legal and factual sufficiency challenges are not moot. See Johnstone v. State, 22 S.W.3d 408, 409 n. 1 (Tex.2000) (per curiam);
[5] The trial court need not specify which basis for clear and convincing evidence was found.
[6] This finding tracks section (2)(C) of the Health and Safety Code, except, section (2)(C) inserts an additional requisite finding here.

The second of the three conjunctive requirements provides that there be a finding that, as a result of the mental illness, appellant is "experiencing substantial mental or physical deterioration of [his] ability to function independently, which is exhibited by [his] inability, except for reasons of indigence, to provide for [his] basic needs, including food, clothing, health, or safety; and...." See TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(c)(ii). This portion of the pre-printed order was manually struck through and initialed by the trial court.